IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PARKSHORE ESTATES NURSING AND REHABILITATION CENTER LLC, an Illinois Limited Liability Company, | CASE NO. 1:23-cv-04367 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, | |
| Defendants. | |

Plaintiff Parkshore Estates Nursing and Rehabilitation Center LLC ("Parkshore"), by and through its counsel of record, and for its claims for relief against Defendants, the United States Small Business Administration ("SBA"), Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, states and alleges as follows:

**NATURE OF THE ACTION**

1.      In order to mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses.  To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorizes the SBA to guarantee hundreds of billions of dollars in loans to small

businesses. PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages. *See* 15 U.S.C. §§ 636(a)(36), 9005-06.

2. "The PPP is a *new* loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)).

3. Historically, prior to the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs. *See* 13 C.F.R. § 120.110. Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, *id.* § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that "*any* business concern . . . *shall* be eligible" for a forgivable PPP loan if it met those criteria. *Id.* § 636(a)(36)(D) (emphasis added).

4. Relying on this expanded eligibility, Parkshore, a skilled nursing and rehabilitation center, applied for a PPP loan on April 6, 2020. The SBA approved the loan under the PPP's

expanded eligibility criteria on April 30, 2020, and the lender disbursed Parkshore's PPP loan on May 18, 2020.

5.      "An eligible recipient **shall** be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641, § 3(b) (2020).  The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness.  CARES Act § 1106(c)(3).  PPP loan recipients must submit forgiveness applications to be considered.  *Id.* § 1106(e).  But Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower was an "eligible recipient" of the PPP loan to at the time it applied for the PPP loan.

6.      Despite clear direction from the CARES Act, the SBA adopted its first Interim Final Rule, effective April 15, 2020, which imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility (the "First IFR").

7.      Although SBA published its intention to issue the First IFR on April 2, 2020, it expressly stated that the First IFR would not take effect until April 15, 2020.

8.      The SBA thereafter adopted six total Interim Final Rules.

9.      The Sixth Interim Final Rule, the rule at issue in this case, had a posted effective date of May 4, 2020 (the "Sixth IFR").  The Sixth IFR imposes restrictions on the amount of loans a single "corporate group" could receive in PPP loans, and it retroactively applied this requirement to all loans that had not been fully disbursed by April 30, 2020.

10.     The concept of this "corporate group" limitation was solely a formation of the SBA in the Sixth IFR.

11.     The Sixth IFR lacks any basis in, and is directly contrary to, the plain text, purpose, and context of the CARES Act.

12.     After enactment of the Interim Final Rules, on March 11, 2021, Congress enacted the American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (Mar. 11, 2021) (the "Rescue Plan"). The Rescue Plan "expanded the eligibility for PPP loans to certain non-profit entities, and in doing so it again expressly incorporated the limitations embodied in the SBA's regulations under 13 C.F.R. § 120.110," which is the pre-COVID-19, pre-CARES Act exclusions on eligibility. *Nat'l Ass'n of Home Builders v. United States SBA*, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sep. 28, 2021). "The disqualification enacted in the [Rescue Plan] was included in verbatim provisions of the PPP 'second-round' enabling statute. The inclusion of additional explicit constraints in the later enactments reinforces rather than contradicts the conclusion that such limitations deliberately were omitted by Congress when it authorized the first round of PPP." *Id.*

13.     The only maximum borrowing limit that Congress placed on loan amounts under both the PPP and the Rescue Plan was to limit loans to no more than $10,000,000 per single eligible borrower. CARES Act, § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii). Congress never adopted a limitation for a maximum cap on "corporate groups." *See id.*

14.     The SBA is applying corporate group limitations in the Sixth IFR to refuse to forgive loans it granted to businesses – including Parkshore – that applied for a PPP loan in reliance on Congress's promise of loan forgiveness *prior to the SBA's adoption of the Sixth IFR on May 4, 2020*. Small businesses risked their financial security by keeping employees on payroll during the COVID-19 pandemic with the benefit of PPP loans they were eligible to receive at the time they applied for them, *and* at the time that the SBA approved them. Now, having done everything that

Congress required of them, businesses are told that they must repay their loans because of the SBA's unlawful application of the Sixth IFR.

15.     This action under the Administrative Procedure Act ("APA") challenges the SBA's adoption of the Sixth IFR, and its application to Parkshore.  Specifically, Parkshore seeks a declaration that the Sixth IFR is unenforceable with respect to its PPP loan forgiveness application.

16.     Because the Sixth IFR renders statutorily eligible business concerns ineligible for PPP loans or loan forgiveness in clear violation of the CARES Act, the Court should "hold unlawful and set aside" the Sixth IFR.  5 U.S.C. § 706(2).

17.     Further, because the SBA applied retroactively the Sixth IFR, which was effective on May 4, 2020, to Parkshore's loan, which it approved on April 30, 2020, the Court should "hold unlawful and set aside" the Sixth IFR as applied to Parkshore as an impermissible retroactive application of the law.  *Id.*

18.     Notwithstanding, the decision of the SBA's Office of Hearings and Appeals ("OHA") should be reversed as arbitrary, capricious, an abuse of discretion, and not in accordance of law because it wrongfully found Parkshore as part of a corporate group.

## PARTIES

19.     Parkshore is a small business based out of Chicago, Illinois, that runs a skilled nursing and rehabilitation center.

20.     SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq*.  Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP.

21.     Defendant Isabella Casillas Guzman is the Administrator of the SBA, and is sued only in her official capacity.  Because she is the officer with final authority for administering the

PPP within the SBA, Administrator Guzman is a proper defendant for causes of action brought under the APA.

22.     Defendant Janet Yellen is the Secretary of the United States Department of Treasury, and is sued only in her official capacity.

23.     Defendant United States of America is a proper defendant in APA cases. *See* 5 U.S.C. § 702.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

25.     Parkshore has standing to seek review of the Sixth IFR because the SBA has used the rule to deny Parkshore's loan forgiveness application.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

27.     The SBA's Sixth IFR is a final agency action under 5 U.S.C. § 704.

28.     Parkshore is entitled to judicial review of the SBA's decision on Parkshore's loan forgiveness application, and the OHA's Decision following appeal of the same.  *See* 13 C.F.R. § 134.1211(g).

## FACTUAL BACKGROUND

29.     Parkshore is a Manager-Managed Limited Liability Company.

30.     Parkshore is a small skilled nursing and rehabilitation center located in Chicago, Illinois.

31.     Parkshore is not a holding or parent company, nor does it have a holding or parent company.

32.     At all times relevant, Parkshore had the following ownership structure: Michael Blisko ("Blisko") individually owns 40%, Gubin Enterprises Limited Partnership, LP ("Gubin Enterprises") owns 40%, and A&F Realty, LLC ("A&F") owns 20%.

33.     Gubin Enterprises is owned by several trusts, where the beneficial ownership rests with four individuals.   Blisko and A&F have no ownership interest in Gubin Enterprises.

34.     A&F is owned by 61 different individuals.  Blisko and Gubin Enterprises have no ownership interest in A&F.

35.     Parkshore is managed by Blisko.

36.     Parkshore suffered significant harm during the COVID-19 pandemic.  As a result of this harm, Parkshore considered terminating some of its employees and reducing the wages of other employees in order for its business to survive.

37.     Before promulgating any of the Interim Final Rules, the federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to any business with fewer than 500 employees.  *See*, *e.g.,* SBA, *Financial Assistance from the US SBA for Small Businesses and Non-Profits*, (Mar. 31, 2020) ("Businesses . . . with 500 or fewer employees may apply."); U.S. Dep't of Treas., *Small Business Paycheck Protection Program*, (Mar. 31, 2020) ("All Small Businesses Eligible"); *see also* 15 U.S.C. § 636(a)(36)(D).

38.     On or around April 6, 2020, in the face of financial hardship and challenging decisions, Parkshore submitted a PPP Borrower Application to Fifth Third Bank, National Association (the "Lender") for a forgivable PPP loan in the amount of $1,374,400.00 to mitigate business losses and enable it to retain its employees through the economic downturn.

39.     Parkshore was approved for a PPP loan by the Lender on April 30, 2020.  At the time of the approval, it operated under the provisions stated by Congress, which provided that loans were for all businesses that met the size requirements for small businesses.

40.     The SBA's Note for $1,374,400.00, the full amount of Parkshore's PPP loan, was dated May 1, 2020.   Parkshore signed the Note on May 18, 2020.

41.     Loan proceeds were distributed to Parkshore on or around May 18, 2020.

42.     Parkshore used its loan proceeds to meet payroll and other expenses permitted by the CARES Act.  Parkshore used at least 60 percent of the loan proceeds for payroll.  While it experienced various operational challenges caused by the pandemic, Parkshore was able to retain its working employees at the same payroll with the assistance of the PPP loan.  Parkshore did not reduce any of its employees' wages or terminate any of its employees because of the PPP loan.

43.     On or around January 26, 2021, as it was permitted to do so under the CARES Act, Parkshore submitted a PPP Loan Forgiveness Application (Form 3508) to the Lender, requesting forgiveness for its full PPP loan amount.

44.     The Lender determined Parkshore should receive full loan forgiveness in the amount of $1,374,400.00 and submitted its decision to the SBA for final review on January 26, 2021.

45.     Although Parkshore's PPP Loan Forgiveness Application demonstrated it had met all of its obligations under the CARES Act as the Lender had recognized, on July 7, 2021, the SBA sent Parkshore a request for additional information supporting its eligibility for loan forgiveness.

46.     On January 19, 2022, the SBA issued a final PPP loan review decision finding Parkshore ineligible for PPP loan forgiveness (the "Decision"), stating that Parkshore was "part of

a corporate group" that received "more than $20,000,000 of PPP loans in the aggregate" based on the Sixth IFR.

47.     Parkshore did not receive the Decision from its Lender until March 21, 2022.

48.     On April 15, 2022, Parkshore submitted an appeal of the Decision to the OHA, clearly showing that Parkshore is not part of a "corporate group" under a plain reading of the Sixth IFR.  It also argued that the SBA's decision was contrary to the plain language of the CARES Act and the SBA's implementing rules, arbitrary and capricious, and contrary to the facts.  Arguments were made that the Sixth IFR was fatally vague and exceeded the scope of authority delegated to the SBA by Congress.

49.     In response, the SBA argued that Parkshore was part of a corporate group with 61 other companies that received PPP loans in excess of $20,000,000.

50.     On July 29, 2022, OHA ultimately requested that Parkshore and the SBA provide additional evidence pertaining to the ownership of Parkshore and entities the SBA alleged to be a "corporate group" with Parkshore.

51.     In response to the OHA's request, Parkshore provided affidavits of Blisko, Moishe Gubin, CEO of Gubin Enterprises, and Ted Lerman, CEO of A&F, to establish the ownership structure of Parkshore.  The affidavits clearly demonstrated that Parkshore had no majority owner.

52.     On or around October 31, 2022, the OHA denied Parkshore's appeal.  The October 31, 2022 OHA Decision is attached hereto as **Exhibit A.**

53.     In its Decision, the OHA found that Blisko and Gubin Enterprises "own various percentages of 203 other residential healthcare entities, 61 of which received PPP loans totaling more than $20,000,000.00."  Consequently, because of this fact alone and in citing law more than

120 years old, the OHA erroneously found that Blisko and Gubin Enterprises have an "implied partnership and are thus part of a corporate group."

54. The OHA further found that it did not have authority to decide whether the Sixth IFR was contrary to the plain language of the CARES Act.

55. The OHA's Decision became final on November 30, 2022, 30 days after the OHA published its Decision. *See* 13 C.F.R. § 134.1211(b).

56. The retroactive application of the Sixth IFR to Parkshore has harmed, and will continue to harm, Parkshore. In the midst of fluctuating economic uncertainty driven by the pandemic, Parkshore now has to worry that the loan forgiveness it reasonably expected will ultimately not be available. Parkshore will now have to divert resources from other endeavors to pay off the unforeseen loan obligation. The likelihood that its loan will not be forgiven requires Parkshore to take costly steps in order to mitigate the financial impact of having to repay the PPP loan which could lead to curtailing parts of the business to generate cash and could even lead to laying off the employees it was able to retain during the pandemic due to the PPP loan.

57. Parkshore certified its eligibility for a PPP loan in good faith. Nevertheless, it now fears that it could be held liable based on its PPP loan application for its application for loan forgiveness.

58. Parkshore reasonably relied on the SBA's approval of its PPP loan on May 18, 2020, as well as the SBA's prior representations, that the PPP loans would be forgiven so long as Parkshore was eligible.

59. Numerous other courts have held that the Interim Final Rules issued by the SBA are contrary to law, exceed the SBA's statutory authority, and are arbitrary and capricious. *See DV Diamond Club v. Small Business Administration,* 960 F.3d 743, 746-47 (6th Cir. 2020)

(denying a motion for stay of injunction barring the First IFR's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on their claim that the rule conflicted with the CARES Act); *Nat'l Ass'n of Home Builders v. U.S. Small Business Administration*, No. 2011780, 2021 U.S. Dist. LEXIS 186548, at *35 (E.D. Mich. Sept. 28, 2021) (enjoining the SBA from denying PPP loans to otherwise-qualified applicants on the basis of the First IFR, given the First IFR exceeded the SBA's statutory authority)[1];*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (holding that the First IFR exceeds statutory authority); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-1729 (7th Cir. May 20, 2020) (order) (denying the SBA's motion for a stay pending appeal); *In re Gateway Radiology Consultants*, P.A., No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *19 (Bankr. M.D. Fla. June 8, 2020) (enjoining the SBA's attempt to "disqualify[] an entire class of troubled small businesses—perhaps those who need it the most— from obtaining grants to pay employees so their workers don't lose their jobs"); *In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at *13 (Bankr. W.D. Tenn. June 2, 2020) ("SBA acted arbitrarily and capriciously in excluding applicants whose owners are debtors in bankruptcy from the PPP."); *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *7 (Bankr. D.N.M. May 1, 2020) (holding that the SBA's First IFR "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds").

60.     Further, the OHA's decision applying an "implied partnership" is contrary to law, exceeds the SBA's statutory authority, and is arbitrary and capricious.  As such, even if the Sixth

---

[1] This case was vacated by the Sixth Circuit Court of Appeals pursuant to settlement between the parties.  *See Nat'l Ass'n of Home Builders v. United States Small Bus. Admin.*, No. 21-1765, 2023 U.S. App. LEXIS 908 (6th Cir. Jan. 13, 2023).

IFR was proper under the law, which it is not, Parkshore disagrees that it is part of a corporate group as the OHA sets forth in its Decision. The OHA's Decision finding Parkshore as part of a corporate group was arbitrary, capricious, an abuse of discretion, and not in accordance with the facts and the law.

**COUNT ONE**
**Agency Action Contrary to Law**
**Loan Application Submitted Before Sixth IFR**
**5 U.S.C. §706(2)(A), (C)**

61.     Parkshore incorporates the foregoing paragraphs as if fully set forth herein.

62.     The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

63.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C).

64.     The Sixth IFR, 85 Fed. Reg. 26324, states explicitly that "[t]his rule is effective May 4, 2020."

65.     The Sixth IFR further provides that "SBA has drafted this rule, to the extent practicable, in accordance with the standards set forth in section 3(a) and 3(b)(2) of the Executive Order 12988, to minimize litigation, eliminate ambiguity, and reduce burden. *The rule has no preemptive or retroactive effect*." (emphasis added).

66.     The Sixth IFR provides a limitation on the amount of PPP loans a single corporate group can receive, stating that "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." The Sixth IFR defines a corporate group as businesses that "are majority owned, directly or indirectly, by a common parent."

12

67.     The Sixth IFR inconsistently provides that the corporate group "limitation shall be immediately effective with respect to any loan that has not been fully disbursed as of April 30, 2020."

68.     On April 6, 2020, Parkshore submitted its PPP loan application to the Lender.

69.     Parkshore's eligibility was based solely on the laws, rules, and guidance in effect at the time of its PPP loan application.  *See* Paycheck Protection Program Loans Frequently Asked Questions as of July 29, 2021, Question 17 ("Borrowers and lenders may rely on the laws, rules, and guidance available **at the time of the relevant application**.") (emphasis added); *see* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, p. 46 ("The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 7A(b), the borrower must be an 'eligible recipient' under section 7(a)(36) and section 7(a)(37) of the Small Business Act and rules and guidance available **at the time of borrower's loan application.**"); 13 C.F.R. § 121.302 ("The size of an applicant for SBA financial assistance is determined **as of the date the application** for financial assistance is accepted for processing by the SBA . . . . Changes in size after the applicable date when size is determined will not disqualify an applicant for assistance.") (emphasis added).

70.     On May 1, 2020, a Note was issued by the SBA in the full amount of Parkshore's PPP loan.

71.     On May 18, 2020, the SBA approved Parkshore's loan application and proceeds were disbursed.

72.     At no point during this process was the Sixth IFR in effect and applicable to Parkshore.  As such, notwithstanding the fact that Parkshore was not part of a corporate group,

even if it was, Parkshore was eligible for its PPP loan at the time it applied for the loan and up through May 4, 2020, the effective date of the Sixth IFR.

73.     Parkshore used its PPP loan proceeds for payroll expenses and other eligible expenses under the CARES Act.

74.     The CARES Act, as amended, provides that all such "*eligible recipient[s] shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

75.     Parkshore used at least 60 percent of its PPP loan proceeds for payroll.

76.     Because it properly and lawfully utilized its loan proceeds, which it was eligible to receive at the time it applied for its PPP loan, Parkshore applied for loan forgiveness January 26, 2021.  Its loan forgiveness application was approved by the Lender.

77.     However, notwithstanding Parkshore being eligible for a PPP loan at the time of its loan application, SBA first indicated its intent to retroactively apply the Sixth IFR to Parkshore on January 19, 2022, when it denied Parkshore's loan forgiveness application.

78.     Defendants' actions to retroactively apply the Sixth IFR to determine that Parkshore was ineligible for its PPP loan are not in accordance with law, including the CARES Act, the APA and the Interim Final Rule itself.  Parkshore is entitled to an order declaring the same.

79.     Parkshore is entitled to a permanent injunction enjoining Defendants from retroactively applying the Sixth IFR.

**COUNT TWO**
**Agency Action Contrary to Law**
**Sixth IFR Contrary to CARES Act**
**5 U.S.C. §706(2)(A), (C)**

80.     Parkshore incorporates the foregoing paragraphs as if fully set forth herein.

81. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

82. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706(2)(A), (C).

83. The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," CARES Act § 1102(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the CARES Act's size requirement, make the required good-faith borrower certification, and have been in operation as of February 15, 2020.

84. The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

85. Parkshore used at least 60 percent of its PPP loan proceeds for payroll.

86. Nothing in the CARES Act authorizes the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Sixth IFR.

87. The Sixth IFR exceeds the Defendants' authority under the CARES Act because the IFR would limit PPP loans in a way that is contrary to the CARES Act, as Congress's only monetary limitation on PPP loan amounts was $10,000,000 per single eligible borrower. *See* CARES Act § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).

88. Congress never adopted a PPP loan limitation for "corporate groups."

89. The SBA's corporate group limitation in the Sixth IFR is not authorized by any statute, and is in excess of statutory jurisdiction and authority. 5 U.S.C. § 706(2)(C).

90.     Defendants' actions to exclude businesses – such as Parkshore – primarily engaged in the business of skilled nursing and rehabilitation, who are entitled to loan forgiveness are not in accordance with law, including the CARES Act and the APA.  Parkshore is entitled to an order declaring the same.

91.     Parkshore is entitled to a permanent injunction enjoining Defendants from applying the Sixth IFR against it, and the Sixth IFR must be vacated, set aside, and not used as basis to deny Parkshore's request for forgiveness of its PPP loan.

**COUNT THREE**
**Arbitrary & Capricious Agency Action**
**5 U.S.C. §706(2)(A)**

92.     Parkshore incorporates the foregoing paragraphs as if fully set forth herein.

93.     The APA authorizes judicial review of federal agency actions.  5 U.S.C. §702.

94.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of discretion."  *Id.* § 706(2)(A).

95.     The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the Act's size requirement, makes the required good-faith borrower certification, and have been in operation as of February 15, 2020.

96.     The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

97.     Parkshore used at least 60 percent of its PPP loan proceeds for payroll.

98.     The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Sixth IFR.

99.     Defendants' exclusion of Parkshore as an eligible business is an abuse of discretion.

100.    Further, Defendants' reliance on an "implied partnership" theory between Parkshore's owners after Parkshore definitively showed it had no majority owners or a common parent is similarly an abuse of discretion.

101.    Parkshore is entitled to a permanent injunction enjoining Defendants from applying the Sixth IFR against it.

**COUNT FOUR**
**Attorney Fees**
**28 U.S.C. § 2412**

102.    Parkshore incorporates the foregoing paragraphs as if fully set forth herein.

103.    Parkshore is entitled to recover its attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

104.    As a result of Defendants' unlawful, arbitrary, and capricious actions, Parkshore is required to obtain legal counsel to bring the foregoing lawsuit to obtain forgiveness of its PPP loan.  It is therefore entitled to its reasonable and necessary attorney fees, costs, and expenses by this Court.

WHEREFORE, Parkshore Estates Nursing and Rehabilitation Center, LLC respectfully requests this Court enter judgment in its favor and against Defendants the United States Small Business Administration, Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, and enter an Order declaring that the Sixth IFR is not in accordance with law

and that it is arbitrary and capricious, permanently enjoining the SBA from enforcing the Sixth IFR against Parkshore in determining eligibility, declaring that Defendants' determination of an "implied partnership" between Parkshore's owners is an abuse of discretion and not in accordance of law, and awarding Parkshore its reasonable attorney fees and costs, and for such other, further and different relief as the Court deems just and equitable.

Dated this 6th day of July, 2023.

Parkshore Estates Nursing and Rehabilitation Center, LLC, Plaintiff,

By: /s/ *Tiffany S. Beerman*
    Tiffany S. Beerman, #26548
    John A. Svoboda, #19888
    Dvorak Law Group, LLC
    9500 W. Dodge Rd., Ste. 100
    Omaha, Nebraska 68114
    Tel: 402-934-4770
    Fax: 402-933-9630
    tbeerman@ddlawgroup.com
    jsvoboda@ddlawgroup.com

AND

    Jason M. Sax, #6243815
    Zwelling Law, PLLC
    161 North Clark Street, Ste. 1600
    Chicago, IL 60601
    Tel: (312) 345-7231
    Fax: (312) 981-0051
    saxJ@zwellinglaw.com

Attorneys for Plaintiff.

Docket No. PPP-6732007302

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Parkshore Estates Nursing and
Rehabilitation Center LLC

       Appellant

Appealed from
SBA PPP Loan Number
6732007302

Issued: October 31, 2022

Decision No. PPP-6732007302



EXHIBIT
A

APPEARANCES

Larry Harris, Esq., Attorney for Borrower

Sameena Nabijee, Esq., Office of General Counsel, SBA

DECISION

## I. Introduction and Jurisdiction

On January 19, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision (FLRD) finding that Parkshore Estates Nursing and Rehabilitation Center LLC (Appellant) is ineligible for the PPP loan received.

On April 15, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness.

For the reasons discussed infra, I DENY the appeal and AFFIRM the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## II. Background

On April 6, 2020, Appellant filed an application for a PPP loan with Fifth Third Bank (Lender). Paresh Vipani, identified as the CFO, signed as authorized representative of the business, and Michael Blisko, identified as its Manager, signed as owner of the business (Administrative Record "AR" at 69-76). The loan for $1,374,400.00 was approved and disbursed by the Lender on May 18, 2020. (AR at 83).

On January 26, 2021, Appellant filed its forgiveness application, requesting full forgiveness of the loan. Michael Blisko, its Manager, signed

1

Docket No. PPP-6732007302

the application as authorized representative of the borrower (AR at 78-82).

On January 19, 2022, SBA issued its final loan review decision denying Appellant forgiveness. (Dkt No. 2[1] and AR at 16-17).

On April 15, 2022, Appellant filed the instant appeal. (Dkt. No. 1)

On June 7, 2022, I issued an order to show cause, as the appeal appeared untimely because it was filed well beyond the issue date of the FLRD. (Dkt. No. 7) On June 13, 2022, Appellant responded to the Order to Show Cause, indicating that it did not receive the notice of the FLRD until March 21, 2022, due to the fact that it was contracted to receive an electronic notice from the lender, which was not sent. (Dkt. No. 8).

Because I found that the appeal was timely filed, on June 14, 2022, I issued a Notice and Order requiring SBA to produce the AR by July 5, 2022. (Dkt. No. 10). The AR and several supplements were filed on June 28, 2022. (Dkt. Nos. 11-16)

The Appellant could have, but did not object to the AR. SBA filed its response to the Appeal on July 29, 2022. (Dkt. No. 17).

On July 29, 2022, I issued an Order Staying the Appeal to allow the Appellant and SBA to file documentation to support the assertions regarding ownership of the entities involved in the forgiveness decision. (Dkt No. 18)

In response to the Order Staying the Appeal, Appellant filed a Motion for Leave to File Affidavits, along with said affidavits describing the ownership of the entities, as well as the operating agreements. (Dkt. Nos. 19-22)

On August 29, 2022, SBA filed a response to the order staying the appeal, requesting additional time to review the documents provided by Appellant. (Dkt. No. 23) I granted the Motion on August 30, 2022. (Dkt. No. 24)

On September 23, 2022, SBA filed a Motion to lift the stay and file an amended response. (Dkt No. 25) I granted the Motion on September 23, 2022. (Dkt. No.26) On October 3, 2022, Appellant filed a Motion for Extension of the Close of the Record, along with a response to the Amended Response of SBA. (Dkt. Nos. 27-28). The record was closed on October 19, 2022.

A. Final SBA Loan Review Decision

On January 19, 2022, SBA issued its final loan review decision finding that the Appellant was ineligible for the PPP loan received. (Dkt. No. 2 and AR at 16-17) In its decision, SBA found:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate.

[1] Docket No. refers to the order in which documents are uploaded to the OHA Case Portal (the Portal).

2

B. <u>Appeal</u>

On April 15, 2022, Michael Blisko, the Manager of the Appellant, filed the instant appeal, arguing that the final SBA loan review decision is clearly erroneous. Appellant's argument is as follows, set out below in pertinent part in the brief by Larry K. Harris, the attorney for the Appellant (Dkt. No. 1):

> SBA's decision was contrary to the plain language of the CARES Act and the SBA's implementing rules, arbitrary and capricious, and contrary to the prevailing facts. OHA should overturn the Review Decision.
>
> Appellant was not part of a corporate group and, further, the rule implementing the corporate group exclusion from eligibility to receive a PPP loan is fatally vague and also exceeded the scope of authority delegated to the SBA by Congress.
>
> SBA erroneously denied forgiveness in the Review Decision under the factually inaccurate conclusion that the corporate group exclusion from PPP loan eligibility applies to the Appellant. Without regard to the factual inaccuracy of the SBA conclusion, as a matter of law the corporate group exclusion from eligibility to receive a PPP Loan is illegal and null and void as fatally vague and because it exceeded the scope of authority granted to the SBA under the CARES Act.
>
> The SBA determined that Appellant was ineligible to receive its PPP loan and based its determination upon a conclusion that the Appellant is part of a corporate group that received more than $20 million in PPP loans in the aggregate. The predicate conclusion is erroneous and both fails to support a bar to the Appellant applying for and receiving a PPP loan and, pertinent to this appeal, fails to support a bar to receiving loan forgiveness.
>
> Appellant is not part of a corporate group under a plain reading of the rule. The Sixth Interim Final Rule[2] defines those entities that are a prt of a corporate group and thus subject to the corporate group rule's $20 million limitation as "...businesses...[that are] majority owned directly or indirectly by a common parent."
>
> The owners of Appellant are: Michael Blisko, an individual (40%); Gubin Enterprises Limited Partnership (40%); and A&F Realty, LLC (20%).

---

[2] Promulgated by SBA on May 4, 2020, at 85 Fed. Reg. 26324.

Appellant has a relatively flat ownership structure---
Mr. Blisko is an individual; the owners of Gubin
Enterprises Limited Partnership are several trusts
where the beneficial ownership rests with four
individuals; and A&F Realty, LLC is a limited liability
company with approximately 75 individuals as its
members. There is no common owners among Gubin
Enterprises Limited Partnership and A&F realty LLC,
and Mr. Blisko has no ownership interest in either
entity.

Rather than having a "common parent" holding
(directly or indirectly) a majority interest in Appellant,
there are three *minority* owners, two of which are
entities and one of whom is an individual with no
ownership interest in either of the entity-owners. As
such, none of the owners of Appellant is a majority
owner of Appellant, directly or indirectly. While
Appellant is unaware of the entities which the SBA has
deemed to constitute a "corporate Group," what is
clear and undeniable is that, without a "common
parent," Appellant cannot be a member of such
purported corporate group. Because Appellant has no
majority owner, it has no common parent with any
other entity (and actually has no parent at all). This,
by definition, Appellant cannot be a part of any
corporate group.

Moreover, it would be arbitrary and capricious to
apply the Sixth Interim Final Rule against Appellant
because it is facially vague and subject to multiple
interpretations. For instance, the Rule purports to
define a *corporate* group. Yet, definitionally, the Rule
appears to extend beyond businesses that are
corporations, and capture within the definition other
non-individual, legally created and cognizable entities
such as limited partnerships, limited liability
companies, and other entities created by combination
of a statute and the action of a state's Secretary of
State (or similar official) solemnizing and
authenticating the creation of that entity,
notwithstanding the SBA's failure to make clear such a
broad reading of the rule.

Finally, the SBA had no authority to promulgate the
Sixth Interim Final Rule. The authority of the SBA
granted in the CARES Act is limited, in terms of
defining eligibility of borrowers. The court in DV
Diamond Club of Flint, LLC v. Small Bus. Admin. at
459 F. Supp. 3d 943 stated [quoted in part]:

> Congress intended that the SBA would make the
> PPP loan guarantees widely available to small

Docket No. PPP-6732007302

businesses across the commercial spectrum.... Congress set about to "[i]ncrease[ ][e]ligibility" for PPP loan guarantees. 15 U.S.C. §636(a)(36)(D). Congress did that by establishing only two criteria for PPP loan guarantee eligibility and providing that "*any* business concern...*shall* be eligible" for a PPP loan guarantee if it met those criteria. 15 U.S.C. §636(a)(36)(D)9i).

.... While Congress may once have been willing to permit the SBA to exclude these businesses from its (the SBA's) lending programs, that willingness evaporated when the COVID-19 pandemic destroyed the economy and threw tens of millions of Americans out of work. Simply put, Congress did not pick winners and losers in the PPP. Instead, through the PPP, Congress provided temporary paycheck support to *all* Americans employed by *all* small businesses that satisfied the two eligibility requirements - even businesses that may have been disfavored during normal times. Thus, the SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP.

[The holding by the court in that case] supports the contention that there was no authority for the SBA to exclude members of corporate groups from receiving PPP loans that they were otherwise entitled to receive merely because the aggregate amount of PPP loans to the corporate group exceeds some arbitrary amount chosen by the SBA.

Accordingly, the SBA overstepped its authority by declining forgiveness to Appellant based on its erroneous conclusion that Appellant was a part of a corporate group.

On July 29, 2022, filed its response to the appeal, arguing in pertinent part (Dkt. No. 17):

### The CARES Act Provided SBA Authority to Make Rules and Regulations to Implement the PPP Loan Program

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the

Docket No. PPP-6732007302

PPP lending program.

SBA's policy of limiting the amount of PPP loans to borrowers in a single corporate 4 group is wholly consistent with the CARES Act and its aims. While there is no question that Congress wanted to protect American workers from unemployment through the CARES Act, it does not follow that Congress expected that objective to be pursued to the exclusion of all other considerations and lending criteria. Indeed, the CARES Act made the PPP part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program (see CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)), which exclude businesses from participation for many reasons, including, for example, the nature of the business and business that have defaulted on federal loans (see 13 C.F.R. § 120.110).

Pursuant to her authority under the CARES Act, the Administrator determined that in order to "preserve the limited resources available to the PPP program" and in light of "the high demand for PPP loans," businesses that are part of a single corporate group could not receive over $20,000,000 in PPP loans in the aggregate:

> The Administrator, in consultation with the Secretary, determined that limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act. The Administrator has concluded that a limitation of $ 20,000,000 strikes an appropriate balance between broad availability of PPP loans and program resource constraints.

85 Fed. Reg. at 26325.

In arguing against this reasonable exercise of the Administrator's authority, Appellant cites to DV Diamond Club of Flint, LLC v. Small Bus. Admin., 960 F.3d 743 (6th Cir. 2020). This case is not dispositive, particularly because Appellant is in the Seventh Circuit. The DV Diamond Club case also didn't involve an ineligible corporate group, it involved an appeal by SBA from a district court's grant of a preliminary injunction in favor of a sexually oriented business that was seeking a PPP loan. Id. at 745.

To date, no district court or appellate court has addressed, or held the corporate group limitation set forth in the Sixth Interim Final Rule ("Sixth IFR") invalid.

Administrative Law Judges (ALJs) are bound by SBA regulation and interpretation of its governing statutes and regulations as they do not have constitutionally based judicial

6

Docket No. PPP-6732007302

power.

Based on the above, OHA should uphold SBA's decision to limit the amount of PPP funds available to a single corporate group. SBA's decision denying Appellant's forgiveness request is consistent with Congressional intent, the plain language of the CARES Act, and the regulations and rules promulgated thereunder.

**Appellant Was a Member of a Corporate Group That Received in Excess of $20,000,000 of PPP Funds**

The Sixth IFR provides that,

> businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020.

85 Fed Reg. 26325. (Emphasis added.) Appellant's PPP loan was disbursed on May 18, 2020. (AR 83)

**Appellant Is Ineligible For PPP Loan Forgiveness**

Appellant's membership in a single corporate group that received more than $20,000,000 in the aggregate in PPP loans rendered it ineligible for PPP loan forgiveness. The Sixth IFR provides that:

> It is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PPP loans in excess of the amount permitted by this interim final rule and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness. 85 Fed Reg. 26325. The corporate group limitation applies to loans that had not been fully disbursed as of April 30, 2020. 85 Fed Reg. 26325. Appellant's PPP loan was disbursed on May 18, 2020, Prior to the disbursement of Appellant's loan, at least 46 loans had been disbursed to other entities in the Blisko/Gubin corporate group in an amount in excess of the $20,000,000 limitation. (AR 263) Therefore, Appellant, as part of the corporate group of 61 PPP loans that received well over $20,000,000, was required to notify its Lender of the excess amount and

7

Docket No. PPP-6732007302

request cancellation of this pending PPP loan
application and all other pending PPP loan application f
or the corporate group. Appellant did not do that.
Therefore, in accordance with the Sixth IFR, the use of
PPP funds for this PPP loan was for unauthorized
purposes, and the loan is not eligible for forgiveness in
accordance with the Sixth IFR.

### III. Discussion

#### A. <u>Standing, Timeliness and Standard of Review</u>

Only the borrower on a loan, or its legal successor in interest for which
SBA has issued a final loan review decision that makes a finding in §
134.1210(b)(1) through (4) has standing to appeal the final SBA loan review
decision to OHA. Lenders and individual owners of a borrower entity do not
have standing to appeal a final SBA loan review decision. 13 CFR §134.1203.

Because Michael Blisko, identified in the record as the Manager of the
Appellant, acted for it as the representative of it as borrower of the PPP loan at
issue, standing is established.

Because the appeal petition was filed within 30 days of the date that the
borrower received the final SBA loan review decision, the appeal was timely
filed. 13 CFR § 134.1202(a).

The Appellant has the burden of proving all elements of the appeal.
Specifically, the Appellant must prove that the final SBA loan review decision
is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

An Administrative Judge or Administrative Law Judge has no constitutionally
based judicial power, see Ramspecky. Federal Trial Examiners Conference, 345 U.S. 128,
132-33 (1953), but are employees of the executive branch department or agency
employing them. See e.g., 20 U.S.C. §1234(c) (statute establishing the Office of
Administrative Law Judges within the Department of Education provides that ALJs
"shall be officers or employees of the Department"). As such ALJs are bound by all policy
directives and rules promulgated by their agency, including the agency's interpretations
of those policies and rules. See Nash v. Bowen, 869 F.2d 675, 680(2d Cir.), cert, denied,
493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir.1986); Brennan
v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert. denied,
479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C.
1985);Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141
(D.D.C.1984); c f D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34
CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere
to policies and rules of the agency).

Thus, an Administrative Judge has no authority to decide the constitutionality of
an SBA law, regulation, or policy or to interpret such contrary to SBA's established
regulation or policy [emphasis added]. The task at hand is to determine whether the
adopted regulations and policies have been appropriately applied to the facts of the case.
Neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals
(OHA) under this subpart are precedential, and thus decisions in other PPP cases are not
persuasive in this matter. 13 CFR §134.1212.

#### B. <u>Analysis</u>

8

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of this Act amends 15 U.S.C. § 636(a) to add another special Section 7(a) loan to the SBA's Section 7(a) loan portfolio, the Paycheck Protection Program (PPP) [emphasis added]. CARES Act, Pub. L. No. 116-136, §1102, 134 Stat. 281, 286 (2020) (codified in 15 U.S.C. §636(a)(36)) [emphasis added]. Congress expressly provided that "[e]xcept as otherwise provided in [15U.S.C. §636(a)(36)], the [SBA] Administrator may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under [15 U.S.C. § 636(a)]." Id. at 287 (codified as 15 U.S.C. 636(a)(36)(B)).

The Paycheck Protection Program was aimed at helping businesses meet payroll costs and pay operating expenses to keep people employed through the economic downturn. Congress first authorized $349 billion in loans. CARES Act § 1102(b)(1). One month later, Congress increased this figure to $6 billion. Paycheck Protection and Health Care Enhancement Act, Pub.L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020). Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA, not later than 15 days after the passage of the Cares Act "shall issue regulations to carry out this title," and SBA implemented and issued several interim final rules (IFRs) under the Program. CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012).

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, if they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a) (36)(D). An Interim Final Rule lays out how one calculates the amount which can be borrowed. As noted above, the Cares Act did not spell out loan restrictions but left it to the SBA to implement rules which would carry out Congressional intent. The First Interim Rule modifies several general Section 7(a) loan eligibility criteria as to PPP loans.

This means that Section 1114 of the CARES Act waived the requirement for the First IFR to be published in the Federal Register. Thus, the First IFR was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on SBA's and Treasury's websites on April 2, 2020. Consequently, publication of the rule in the Federal Register was not required, but SBA did so in furtherance of the intent of the requirement that it issue regulations to carry out the PPP.

The IFR had both an effective date and an applicability date. April 15, 2020 is the date the IFR was published in the Federal Register, and the applicability date indicates that the IFR applies to applications submitted under the PPP through June 30, 2020, or until funds are exhausted. 85 Fed. Reg, Page 20812. The IFR went through several revisions, most notably to account for the creation of the second draw PPP loans.

The Paycheck Protection Program was widely utilized. In order to provide assistance to as many business concerns as possible, the SBA promulgated rules to render some entities ineligible for PPP loans.

Specifically, the Sixth IFR provided that businesses that are a part of a single corporate group shall in no event receive more than $20,000,000.00 of PPP loans in the aggregate. 85 Fed. Reg. 26324. The rule also places the responsibility on the applicant to notify the lender if its loan applications or disbursements exceed those limits. *Id.* An Applicant's failure to do so would be regarded as use of the PPP funds for unauthorized

Docket No. PPP-6732007302

purposes, rendering them ineligible for loan forgiveness.  *Id.*

To determine whether Appellant was part of a corporate group, SBA uses its affiliation rules and the consolidated IFR.  The affiliation rules provide, in relevant part, as follows:

> (1) Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. **If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.** (13 C.F.R. § 121.301(f)(1)) (emphasis added)

In the instant appeal, Appellant's contention that there is no majority owner of Appellant, and thus no affiliation exists, must fail.  As set forth in the above rule, if there is no individual, concern or entity that owns or has the power to control more than 50 percent of the concern's voting equity, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) or other officers, managing members, or partners to be in control of the concern.

Michael Blisko is the manager of the Appellant.  (Dkt. No. 20; AR at 69-76 and 78-82) He owns 40% of Appellant.  He is clearly in control of the Appellant based on his title and the fact that he signed the loan and forgiveness applications of the Appellant. (Dkt. No. 20; AR at 69-76 and 78-82). Moishe Gubin is the President of Gubin Ventures GP, Inc., which is the General Partner of Gubin Enterprises Limited Partnership (Dkt. No. 21) Gubin Enterprises Limited Partnership owns 40% of Appellant.  (Dkt. No. 13) Michael Blisko and Gubin Enterprises Limited Partnership additionally own various percentages of 203 other residential healthcare entities, 61 of which received PPP loans totaling more than $20,000,000.00. (AR at 257)

"If there is such a joinder of interests and action as the law will consider as equivalent, and regards as in effect, constituting a partnership, it will give to the persons so engaged all the rights, and lay upon them all the responsibilities, and to third persons all the remedies, which belong to a partnership." *Haug v. Haug,* 61 N.E. 1053 (1901), see also *Dailey v. Coons,* 64 Ind. 545 (1878).

As Mr. Blisko is involved in over 200 residential health care enterprises with Gubin Enterprises Limited Partnership, the entities have an implied partnership and are thus part of a corporate group.  Therefore, they are ineligible for loans exceeding $20,000,000.00 in the aggregate. (AR at 253-255)

Additionally, Appellant failed to disclose that entities in its corporate group received more than $20,000,000.00 in PPP loans in the aggregate, which was required by the rules**.** 85 F.R. 26324 As such, the PPP loans were used for unauthorized purposes, rendering them ineligible for loan forgiveness.  *Id.*

Appellant's argument that SBA's rule was contrary to the plain language of the CARES Act need not be addressed as it is outside the

Docket No. PPP-6732007302

authority of an Administrative Law Judge or an Administrative Judge, such as myself. I am therefore only authorized to determine whether adopted regulations and policies by SBA have been appropriately applied to the facts of the case.

Based on my review of the voluminous record, I have concluded that the regulations and policies of SBA were properly applied to the facts of this case.

## C. <u>Conclusion</u>

The Appellant has not established that the final SBA loan review decision is based on a clear error. I **DENY** the appeal and **AFFIRM** the final SBA loan review decision.

This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

A party may file a request for reconsideration within **10 calendar days** after service of an initial decision. You can serve your petition via email to <u>OHAPPPinquiries@sba.gov.</u>

A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1). It is the borrower's responsibility to review the rules and procedures.

*Clifford Sturek*
_____

CLIFFORD STUREK
Administrative Judge