IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

PARKSHORE ESTATES NURSING AND
REHABILITATION CENTER LLC, an
Illinois Limited Liability Company,

      Plaintiff,

v.

THE UNITED STATES SMALL BUSINESS
ADMINISTRATION; ISABELLA
CASILLAS GUZMAN, in her official capacity
as Administrator of the Small Business
Administration; JANET YELLEN, in her
official capacity as United States Secretary of
Treasury; and THE UNITED STATES OF
AMERICA,

      Defendants.

Case No. 1:23-cv-04367

Honorable Judge Nancy L. Maldonado

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT PURSUANT TO LR 56.1(d)**

Plaintiff Parkshore Estates Nursing and Rehabilitation Center LLC ("Plaintiff"), by and

through its counsel of record, and pursuant to LR 56.1(d), hereby submits its Statement of Material

Facts in Support of its Motion for Summary Judgment.

**Congressional Response to the COVID-19 Pandemic**

1.      In order to mitigate the economic devastation caused by the COVID-19 pandemic,

Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub.

L. No. 116-136, 134 Stat. 281 (2020). Congress's purpose in adopting the CARES Act was to

ensure continued employment and income for the millions of Americans employed by small

businesses.  To accomplish that critical goal, Congress created the Paycheck Protection Program

("PPP"), which authorized the SBA to guarantee hundreds of billions of dollars in loans to small

1

businesses. PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages. *See* 15 U.S.C. §§ 636(a)(36), 9005-06; Defendants' Answer ("Defs. Ans."), ¶ 1.

2. "The PPP is a *new* loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)); *see also* Defs. Ans., ¶ 2.

3. Historically, prior to the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs. *See* 13 C.F.R. § 120.110. Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, *id.* § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that "*any* business concern . . . *shall* be eligible" for a forgivable PPP loan if it met those criteria. *Id.* § 636(a)(36)(D) (emphasis added); Defs. Ans., ¶ 3.

2

4.      "An eligible recipient **shall** be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641, § 3(b) (2020).  The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness.  CARES Act § 1106(c)(3).  PPP loan recipients must submit forgiveness applications to be considered.  *Id.* § 1106(e).  But Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower was an "eligible recipient" of the PPP loan to at the time it applied for the PPP loan.  *See also* Defs. Ans., ¶ 5.

5.      Despite clear direction from the CARES Act, the SBA adopted its first Interim Final Rule, effective April 15, 2020, which imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility (the "First IFR").  *See* 80 Fed. Reg. 20,811 (April 15, 2020).

6.      Although SBA published its intention to issue the First IFR on April 2, 2020, it expressly stated that the First IFR would **not** take effect until April 15, 2020.  80 Fed. Reg. 20,811 (April 15, 2020); Defs. Ans., ¶ 7.

7.      The SBA thereafter adopted multiple Interim Final Rules.  The Sixth Interim Final Rule, the rule at issue in this case, had a posted effective date of May 4, 2020 (the "Sixth IFR").  85 Fed. Reg. 26,324 (May 4, 2020).  The Sixth IFR imposes restrictions on the amount of loans a single "corporate group" could receive in PPP loans, and it retroactively applied this requirement to all loans that had not been fully disbursed by April 30, 2020.  85 Fed. Reg. 26,324 (May 4, 2020); Defs. Ans., ¶ 9.

8.      The concept of this "corporate group" limitation was solely a formation of the SBA in the Sixth IFR.  85 Fed. Reg. 26,324 (May 4, 2020).

3

9. After enactment of the Interim Final Rules, on March 11, 2021, Congress enacted the American Rescue Plan Act (the "Rescue Plan"). *See* Pub. L. No. 117-2, 135 Stat. 4 (Mar. 11, 2021). The Rescue Plan "expanded the eligibility for PPP loans to certain non-profit entities, and in doing so, it again expressly incorporated the limitations embodied in the SBA's regulations under 13 C.F.R. § 120.110," which is the pre-COVID-19, pre-CARES Act exclusions on eligibility. *Nat'l Ass'n of Home Builders v. United States SBA*, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sep. 28, 2021). "The disqualification enacted in the [Rescue Plan] was included in verbatim provisions of the PPP 'second-round' enabling statute. The inclusion of additional explicit constraints in the later enactments reinforces rather than contradicts the conclusion that such limitations deliberately were omitted by Congress when it authorized the first round of PPP." *Id.*; *see also* Defs. Ans., ¶ 12.

10. The only maximum borrowing limit that Congress placed on loan amounts under both the PPP and the Rescue Plan was to limit loans to no more than $10,000,000 per single eligible borrower ($2,000,000 per borrower for second round PPP). CARES Act, § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii); *see also* 15 U.S.C. § 636(a)(37)(C)(i). Congress never adopted a limitation for a maximum cap on "corporate groups." *See id.*

11. Before promulgating any of the Interim Final Rules, the federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to any business with fewer than 500 employees. *See*, *e.g.,* SBA, *Financial Assistance from the US SBA for Small Businesses and Non-Profits*, (Mar. 31, 2020) ("Businesses . . . with 500 or fewer employees may apply."); U.S. Dep't of Treas., *Small Business Paycheck Protection Program*, (Mar. 31, 2020) ("All Small Businesses Eligible"); *see also* 15 U.S.C. § 636(a)(36)(D).

12. The SBA is applying corporate group limitations in the Sixth IFR to refuse to forgive loans it granted to businesses that applied for a PPP loan in reliance on Congress's promise of loan forgiveness prior to the SBA's adoption of the Sixth IFR on May 4, 2020. *See* Defs. Ans., ¶ 14.

**Plaintiff's PPP Loan and Forgiveness Application and the SBA's Denial**

13. Plaintiff is a Manager-Managed Limited Liability Company located in Chicago, Illinois, that provides skilled nursing and rehabilitation services. *See* Plaintiff's Complaint ("Plf. Compl."), ¶¶ 29, 30; Defs. Ans., ¶¶ 29, 30.

14. Plaintiff is not a holding or parent company, nor does it have a holding or parent company. *See* Administrative Record ("AR"), p. 439–566.

15. At all times relevant, Plaintiff had the following ownership structure: Michael Blisko ("Blisko") individually owned 40%, Gubin Enterprises Limited Partnership, LP ("Gubin Enterprises") owned 40%, and A&F Realty, LLC ("A&F") owned 20%. AR, p. 439–566.

16. Gubin Enterprises is owned by several trusts, where the beneficial ownership rests with four individuals. AR, p. 466–504. Blisko and A&F have no ownership interest in Gubin Enterprises. *See id.*; AR, p. 439–465, 505–566.

17. A&F is owned by 61 different individuals. AR, p. 505–566. Blisko and Gubin Enterprises have no ownership interest in A&F. *See id.*; AR, p. 439–465, 466–504.

18. Plaintiff is managed by Blisko. AR, p. 439.

19. On or around April 6, 2020, in the face of financial hardship and challenging decisions, Plaintiff submitted a PPP Borrower Application to Fifth Third Bank, National Association (the "Lender") for a forgivable PPP loan in the amount of $1,374,400.00 to mitigate

5

business losses and enable it to retain its employees through the economic downturn. AR, p. 217–218.

20.     Plaintiff was approved for a PPP loan by the Lender on April 30, 2020. *See* AR, p. 12. At the time of the approval, it operated under the provisions stated by Congress, which provided that loans were for all businesses that met the size requirements for small businesses. *See* CARES Act.

21.     The SBA's Note for $1,374,400.00, the full amount of Plaintiff's PPP loan, was dated May 1, 2020. AR, p. 176–181. Plaintiff signed the Note on May 18, 2020. *Id*.

22.     Loan proceeds were distributed to Plaintiff on or around May 18, 2020. *See* AR, p. 220.

23.     Plaintiff used its loan proceeds to meet payroll and other expenses permitted by the CARES Act. Plaintiff used at least 60 percent of the loan proceeds for payroll. *See* AR, p. 200–204. While it experienced various operational challenges caused by the pandemic, Plaintiff was able to retain its working employees at the same payroll with the assistance of the PPP loan. *See* AR, p. 220. Plaintiff did not reduce any of its employees' wages or terminate any of its employees because of the PPP loan. *Id*.

24.     On or around January 26, 2021, as it was permitted to do so under the CARES Act, Plaintiff submitted a PPP Loan Forgiveness Application (Form 3508) to the Lender, requesting forgiveness for its full PPP loan amount. AR, p. 220–235.

25.     The Lender determined Plaintiff should receive full loan forgiveness in the amount of $1,374,400.00 and submitted its decision to the SBA for final review on January 26, 2021. *See* AR, p. 12.

26. Although Plaintiff's PPP Loan Forgiveness Application demonstrated it had met all of its obligations under the CARES Act as the Lender had recognized, on July 7, 2021, the SBA sent Plaintiff a request for additional information supporting its eligibility for loan forgiveness. AR, p. 204–206.

27. On January 19, 2022, the SBA issued a final PPP loan review decision finding Parkshore ineligible for PPP loan forgiveness (the "Decision"), stating that Plaintiff was "part of a corporate group" that received "more than $20,000,000 of PPP loans in the aggregate" based on the Sixth IFR. AR, p. 158–159.

28. Plaintiff did not receive the Decision from its Lender until March 21, 2022. AR, p. 19–20.

29. On April 15, 2022, Plaintiff submitted an appeal of the Decision to the OHA, clearly showing that Plaintiff is not part of a "corporate group" under a plain reading of the Sixth IFR. *See* AR, p. 1–9. It also argued that the SBA's decision was contrary to the plain language of the CARES Act and the SBA's implementing rules, arbitrary and capricious, and contrary to the facts. *Id*. Further, Plaintiff maintained that the Sixth IFR was fatally vague and exceeded the scope of authority delegated to the SBA by Congress. *Id.*; *see also* AR, p. 583–589.

30. In response, the SBA argued that Plaintiff was part of a corporate group with 61 other companies that received PPP loans in excess of $20,000,000. AR, p. 425–432.

31. On July 29, 2022, OHA ultimately requested that Plaintiff and the SBA provide additional evidence pertaining to the ownership of Parkshore and entities the SBA alleged to be a "corporate group" with Plaintiff. *See* AR, p. 433–434.

32. In response to the OHA's request, Parkshore provided affidavits of Blisko, Moishe Gubin, CEO of Gubin Enterprises, and Ted Lerman, CEO of A&F, to establish the ownership

7

structure of Plaintiff. The affidavits clearly demonstrated that Plaintiff had no majority owner. AR, p. 435–566.

33. On or around October 31, 2022, the OHA denied Plaintiff's appeal. *See* Plf. Compl., Ex. A (the "OHA Decision"); AR, p. 590–600.

34. In its Decision, the OHA found that Blisko and Gubin Enterprises "own various percentages of 203 other residential healthcare entities, 61 of which received PPP loans totaling more than $20,000,000.00." OHA Decision, p. 10; AR, p. 599. Consequently, because of this fact alone and in citing law more than 120 years old, the OHA erroneously found that Blisko and Gubin Enterprises have an "implied partnership and are thus part of a corporate group." *Id.*

35. The OHA further found that it did not have the authority to decide whether the Sixth IFR was contrary to the plain language of the CARES Act. OHA Decision, p. 10–11; AR, p. 599–600.

36. The OHA's Decision became final on November 30, 2022, 30 days after the OHA published its Decision. *See* OHA Decision; AR, p. 590–600*;* 13 C.F.R. § 134.1211(b).

Dated this 16th day of January, 2024.

PARKSHORE ESTATES NURSING AND
REHABILITATION CENTER, LLC, Plaintiff,

By: /s/ *Tiffany S. Beerman*
    Tiffany S. Beerman
    John A. Svoboda
    Dvorak Law Group, LLC
    9500 W. Dodge Rd., Ste. 100
    Omaha, Nebraska 68114
    Tel: 402-934-4770
    Fax: 402-933-9630
    tbeerman@ddlawgroup.com
    jsvoboda@ddlawgroup.com

AND

    Jason M. Sax, #6243815
    Zwelling Law, PLLC
    161 North Clark Street, Ste. 1600
    Chicago, IL 60601
    Tel: (312) 345-7231
    Fax: (312) 981-0051
    saxJ@zwellinglaw.com

Attorneys for Plaintiff.

9

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on January 16, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered with the CM/ECF system. The undersigned further states that a copy of the foregoing was sent to the following:

WILLIAM M. STROM
219 South Dearborn Street
Chicago, Illinois 60604
(312) 697-4087
william.strom@usdoj.gov

/s/ *Tiffany S. Beerman*
Tiffany S. Beerman