IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARKSHORE ESTATES NURSING AND REHABILITATION CENTER LLC, an Illinois Limited Liability Company,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA,<br><br>        Defendants. | Case No. 1:23-cv-04367<br><br>Honorable Judge Nancy L. Maldonado |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO LR 56.1(g)**

Plaintiff Parkshore Estates Nursing and Rehabilitation Center LLC ("Plaintiff"), by and through its counsel of record, and pursuant to LR 56.1(d), hereby respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment against Defendants The United States Small Business Administration ("SBA"), Isabella Casillas Guzman, Janet Yellen, and The United States of America (collectively, the "Defendants").

1

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 7

STATEMENT OF FACTS ..................................................................................................... 10

STANDARD OF REVIEW ..................................................................................................... 10

ARGUMENT ............................................................................................................................ 11

      I.       The Sixth IFR cannot be applied retroactively. ...................................................... 11

      II.     The plain language of the CARES Act PPP eligibility provision precludes

            business-type eligibility restrictions as unlawful. .................................................. 14

      III.    The Sixth IFR is arbitrary and capricious. ............................................................ 19

      IV.   The SBA lacks authority to limit the type of payment eligible for a PPP loan. ... 20

      V.     Plaintiff is not part of a "corporate group." .......................................................... 23

CONCLUSION ........................................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases:**

*Acosta v. Hensel Phelps Constr. Co.*,
909 F. 3d 723 (5th Cir. 2018) ............................................................. 16

*Advanced Cabinets Corp. v. Mayorkas*,
No. 19 C 5930, 2021 WL 825608 (N.D. Ill. March 4, 2021) ............................. 10

*Bedroc Ltd. V. United States*,
541 U.S. 176 (2004) ...................................................................... 15

*Boucher v. United States Departmnet of Agriculture*,
934 F.3d 530 (7th Cir. 2019) ............................................................. 19

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
458 F. Supp. 3d 1044 (E.D. Wis. 2020) ...................................... 8, 17, 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................... 10

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) .................................................................. 15, 22

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .................................................................. 14, 15

*Cunningham v. Matrix Fin. Servs.*,
531 F. Supp. 3d 1164 (E.D. Tex. 2021) ...................................... 13, 26

*DV Diamond Club of Flint, LLC v. SBA*,
960 F.3d 743 (6th Cir. 2020) ........................................... 9, 16, 17, 18, 21

*Esquival-Quintana v. Sessions*,
137 S. Ct. 1562 (2017) ................................................................... 22

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) ................................................................... 19

*Fisher v. Pension Benefit Guar. Corp.*,
468 F. Supp. 3d 7 (D.D.C. 2020) ........................................................ 10

*Gibbon v. Berryhill*,
No. 5:17-CV-402-D, 2019 U.S. Dist. LEXIS 64916
(E.D.N.C. Feb. 22, 2019) .......................................................... 13, 26

*Greene v. United States*,
    376 U.S. 149 (1964) ................................................................................. 13, 26

*In re Gateway Radiology Consultants, P.A.*,
    983 F.3d 1239 (11th Cir. 2020) ..................................................................... 9, 18

*In re USA Gymnastics*,
    Nos. 18-09108-RLM-aa, 20-50055, 2020 Bankr. LEXIS 3747
    (Bankr. S.D. Ind. June 12, 2020) ............................................................. 15, 17, 21

*In re Roman Catholic Church of Archdiocese of Santa Fe*,
    No, 18-13027 T11, 2020 WL 2096113 (Bankr. D.N.M. May 1, 2020) ......... 17, 21

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ................................................................................. 13, 26

*Marsh v. Oregon Natural Resources Council*,
    490 U.S. 360 (1989) ...................................................................................... 19

*Missouri v. Biden*,
    142 S. Ct. 647 (2022) ..................................................................................... 19

*Motor Vehicle Mrfs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................. 19, 20

*Nat'l Ass'n of Home Builders v. U.S. Small Bus. Admin.*,
    No. 2011780, 2021 U.S. Dist. LEXIS 186548
    (E.D. Mich. Sept. 28, 2021) .................................................... 16, 17, 18, 21, 22, 25

*Nat'l Cable & Telecomm. Ass'n v. Brand-X Internet Servs.*,
    545 U.S. 967 (2005) ...................................................................................... 22

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ................................................................................... 15

*Shenandoah Ecosystems Def. Grp. V. U.S. Forest Serv.*,
    144 F. Supp. 2d 542 (W.D. Va. 2001) ............................................................... 10

*Simmons v. Himmelreich*,
    578 U.S. 621 (2016) .................................................................................. 15, 16

*Star Athletica, L.L.C. v. Varsity Brands*,
    580 U.S. 405 (2017) ...................................................................................... 15

*Star Way Lines v. Walsh*,
    596 F. Supp. 3d 1142 (N.D. Ill. 2022) ..................................................... 10

*Stone v. Hamilton*,
    308 F.3d 751 (7th Cir. 2002) ..................................................... 13, 26

*Sunrise Coop., Inc. v. United States Dept. of Agric.*,
    891 F.3d 652 (6th Cir. 2018) ..................................................... 22

*Swaback v. Am. Info. Techs. Corp.*,
    103 F.3d 535 (7th Cir. 1996) ..................................................... 20

*Union Pacific R.R. Co. v. Laramie*,
    231 U.S. 190 (1913) ..................................................... 13, 26

*United States v. Gonzales*,
    520 U.S. 1 (1997) ..................................................... 15

*U.S. v. Vanella*,
    619 F.2d 384 (5th Cir. 1980) ..................................................... 13

**Code of Federal Regulations:**

12 C.F.R. § 1234.2 ..................................................... 23, 24

13 C.F.R. § 120.110 ..................................................... 7

13 C.F.R. § 121.301 ..................................................... 25

13 C.F.R. § 121.302 ..................................................... 12

**Federal Register:**

85 FED. REG. 20,811 ..................................................... 8

85 FED. REG. 20,813 ..................................................... 8

85 FED. REG. 20,814 ..................................................... 8

85 FED. REG. 26,324 ..................................................... 8, 12, 14, 23

85 FED. REG. 33,010 ..................................................... 12

**Secondary Sources:**

*Majority*, DICTIONARY.COM, dictionary.com/browse/majority ..................................................... 23

OXFORD ENGLISH DICTIONARY (3d ed., Mar. 2016) ........................................................ 16

*Parent Corporation*, BLACK'S LAW DICTIONARY 418 (10th ed. 2014) ........................... 26

Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review
 Procedures as Amended by Economic Aid Act, p. 46 ................................... 11, 12

PPP Loans Frequently Asked Questions, Question 17, July 29, 2021 ...................... 11, 12

**Statutes**

5 U.S.C. § 553 ................................................................................................ 22

5 U.S.C. § 702 ................................................................................................ 10

5 U.S.C. § 706 ............................................................................................. 10, 19

15 U.S.C. § 636(a)(36) ............................................................................. *Passim*

15 U.S.C. § 9005 .............................................................................................. 7

15 U.S.C. § 9006 .............................................................................................. 7

FED. R. CIV. P. 56 ........................................................................................... 10

**INTRODUCTION**

In March 2020, the COVID-19 pandemic caused significant devastation to the United States economy.  It put tens of millions of Americans out of work and closed many businesses.  To alleviate the damage caused by the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") on March 27, 2020.  Section 1102(a)(2) of the CARES Act added paragraph 36 to Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)).

Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses most affected by the COVID-19 pandemic.  To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorizes the SBA to guarantee hundreds of billions of dollars in loans to small businesses.  PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages.  *See* 15 U.S.C. §§ 636(a)(36), 9005-06.

Historically, before the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs.  *See* 13 C.F.R. § 120.110.  Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, *id.* at § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum.  Congress did so by establishing specific, limited criteria for PPP loan eligibility and by providing unambiguously that "**any** business concern . . . **shall** be eligible" for a forgivable PPP loan if it met those criteria.  15 U.S.C. § 636(a)(36)(D) (emphasis added).

"The PPP is a **new** loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)).  Its purpose is to assist small businesses

7

during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan **will** be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (emphasis added) (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)); *see also* 15 U.S.C. § 636(a)(36)(E) (instructions for calculating the maximum loan amount eligible for forgiveness under the PPP loan program).

The issue in this case surrounds the SBA's decision to adopt certain Interim Final Rules. Despite Congress's direction that "*any* business concern . . . *shall* be eligible to receive a covered [PPP] loan," the SBA adopted its first Interim Final Rule, which imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility (the "First IFR"). *See* 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020). The SBA ultimately adopted more Interim Final Rules, including the Sixth Interim Final Rule, the rule at issue in this case, which went into effect on May 4, 2020 (the "Sixth IFR"). 85 Fed. Reg. 26,324. The Sixth IFR imposed a limitation on the amount of PPP loans a single corporate group can receive, stating that "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." *Id.* The Sixth IFR defines a corporate group as businesses that "are majority owned, directly or indirectly, by a common parent." *Id.* Despite the Sixth IFR explicitly stating that it "has no preemptive or retroactive effect," it provided that the corporate group "limitation shall be immediately effective with respect to any loan that has not been fully disbursed as of April 30, 2020." *Id.*

8

Despite otherwise being eligible under the CARES Act, the SBA denied loan forgiveness to Plaintiff based on its adoption of the Sixth IFR. Specifically, the SBA and the SBA Office and Hearing and Appeals (the "OHA") found that the corporate group limitation under the Sixth IFR barred forgiveness of Plaintiff's PPP loan. *See* Compl., Ex. A.

Notably, the Sixth IFR was *not* in effect when Plaintiff applied for its PPP loan on April 6, 2020. In fact, at the time of Plaintiff's PPP loan application, the only statutory guidance available to Plaintiff regarding the limits of its PPP loan was the CARES Act. The law is clear that eligibility is determined based on the laws available to a borrower at the time of its PPP loan application. As such, the SBA improperly applied the Sixth IFR to Plaintiff.

The SBA's adoption of the Sixth IFR was improper. Courts have held that Congress's mandate for PPP eligibility for "*any* business concern" "made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances." *DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743,747 (6th Cir. 2020); *see also In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020) (citing CARES Act, § 1102, 134 Stat. at 286 (amending § 7(a)) ("[T]he PPP was not created as a standalone program; instead, it was added into § 7(a), albeit with several of that subsection's general eligibility requirements relaxed.")). The SBA's adoption of the Sixth IFR is at odds with the plain language of the CARES Act. Under the CARES Act, Plaintiff is clearly eligible for full forgiveness of its PPP loan, and the SBA's retroactive application of the Sixth IFR after Plaintiff submitted its PPP loan application was and continues to be unlawful. As such, and because there is no genuine dispute of fact in this case, Plaintiff respectfully requests that this Court enter judgment in its favor because the Sixth IFR is contrary to law, is in excess of agency authority, and is arbitrary and capricious.

**STATEMENT OF FACTS**

Plaintiff incorporates the Statement of Facts filed contemporaneously herewith as if stated fully herein.

**STANDARD OF REVIEW**

A motion for summary judgment should normally be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, when reviewing an agency's final decision under the Administrative Procedures Act ("APA"), summary judgment acts as a tool to determine whether a federal agency's action is consistent with the APA's standard of review. *Star Way Lines v. Walsh*, 596 F. Supp. 3d 1142, 1149 (N.D. Ill. 2022) (citing *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020) (internal quotations omitted).

Under the APA, courts have the express authority to review federal agency actions. 5 U.S.C. § 702. The APA provides that courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). In order to be successful on summary judgment under the APA, "plaintiffs must point to facts or factual failings in the administrative record that indicate that the [agency's] decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Advanced Cabinets Corp. v. Mayorkas*, No. 19 C 5930, 2021 WL 825608 (N.D. Ill. March 4, 2021) (citing *Shenandoah Ecosystems Def. Grp. v. U.S. Forest Serv.*, 144 F. Supp. 2d 542, 547 (W.D. Va. 2001) (quoting 5 U.S.C. § 706(2)(A))).

10

**ARGUMENT**

The SBA's Sixth IFR is not in accordance with the law and is in excess of statutory authority. First and foremost, the SBA is precluded from the retroactive application of the Sixth IFR. Second, the Sixth IFR is contrary to the text and intent of the CARES Act. Finally, the SBA's decision to exclude Plaintiff from PPP loan eligibility must be set aside as arbitrary and capricious. Alternatively, even if the SBA could apply the Sixth IFR's "corporate group" limitation, which Plaintiff expressly rejects, Plaintiff does not meet the definition of a "corporate group." For these reasons the Plaintiff's Motion for Summary Judgment should be granted, reversing the OHA's October 31, 2022 final decision (the "OHA Decision") and the SBA's January 19, 2022 Final Loan Review Decision (the "SBA Final Loan Decision").

## I. The Sixth IFR cannot be applied retroactively.

The SBA's retroactive application of the Sixth IFR to refuse to forgive loans granted to otherwise eligible businesses, like Plaintiff, that applied for loans before the SBA's adoption of the Sixth IFR on May 4, 2020, is both inappropriate and contrary to the Sixth IFR itself. As such, this Court should grant Plaintiff's Motion for Summary Judgment, and reverse the OHA Decision.

At the time Plaintiff completed its PPP loan application on April 6, 2020, the CARES Act was the only law available to Plaintiff. As such, Plaintiff properly relied on such law when applying for its PPP loan. "Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application." *See* PPP Loans Frequently Asked Questions, Question 17, July 29, 2021; *see also* Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, p. 46 (". . . the borrower must be an 'eligible recipient' under section 7(a)(36) and section 7(a)(37) of the Small Business Act and rules and guidance available **at the time of borrower's loan application.**") (emphasis added); 13 C.F.R. § 121.302 ("The size of an applicant for SBA financial assistance is

11

determined **as of the date the application** for financial assistance is accepted for processing by the SBA . . .. Changes in size after the applicable date when size is determined will not disqualify an applicant for assistance.") (emphasis added); 85 Fed. Reg. 33,010 (stating that the SBA may determine a loan eligible for forgiveness "[i]f the SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on provisions of the CARES Act, SBA rules or guidance available **at the time of the borrower's loan application** . . .") (emphasis added). At the time of its application, Plaintiff relied on the plain language of the CARES Act, which unambiguously provided that "**any** business concern . . . **shall** be eligible" for a forgivable PPP loan if it met certain criteria, up to the $10 million cap. 15 U.S.C. § 636(a)(36)(D) (emphasis added); 15 U.S.C. § 636(a)(36)(E) ("Maximum loan amount . . . [D]uring the covered period, with respect to a covered loan, the maximum loan amount shall be the lesser of [the average monthly payroll multiplied by 2.5], or $10,000,000"). Plaintiff, meeting the criteria set forth in the CARES Act, applied for a PPP loan for less than the $10 million cap. The SBA's attempt to apply the Sixth IFR to Plaintiff is thus not in accordance with the law and is in excess of statutory authority.

Further, the Sixth IFR clearly provided that the effective date of the rule as May 4, 2020, and that "[t]he rule has **no preemptive or retroactive effect**." 85 Fed. Reg. 26,324 (emphasis added). The SBA's attempt to make the Sixth IFR "immediately effective" to loans not fully **disbursed** as of April 30, 2020, is also erroneous. As noted above, it is clear that the date to determine eligibility and applicability of the rules and guidance is the date of **application, not** the date of loan **disbursement**. *See* PPP Loans Frequently Asked Questions, Question 17, July 29, 2021; *see also* Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, p. 46; 13 C.F.R. § 121.302 85 Fed. Reg. 33,010. Because the Sixth IFR did not take effect until nearly one month after Plaintiff **applied** for the

12

loan, it could not be applicable to Plaintiff's loan, and the SBA's denial of Plaintiff's PPP loan forgiveness based on the Sixth IFR was in contravention of law and longstanding precedent regarding the retroactive application of Congressional acts.

Foundational to the canons of construction is the notion that Courts must construe Congressional acts as forward-looking, and that retrospective application will not be given to a statute absent "clearly expressed" intent. *U.S. v. Vanella*, 619 F.2d 384, 385 (5th Cir. 1980) (citing *Greene v. United States*, 376 U.S. 149, 160 (1964)); *see also Union Pac. R.R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199 (1913) ("[T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past . . . [and] a retrospective operation will not be given to a statute . . . unless such be the unequivocal and inflexible import of the terms and the manifest intention of the legislature."). There is longstanding authority that statutes and regulations cannot be applied retroactively unless there is a "manifest intention" that they are meant to be retroactive. *Cunningham v. Matrix Fin. Servs.,* 531 F. Supp. 3d 1164, 1173-1173 (E.D. Tex. 2021) (citing *Union Pac. R.R. Co.,* 231 U.S. at 199); *Gibbon v. Berryhill*, No. 5:17-CV-402-D, 2019 U.S. Dist. LEXIS 64916, at *14 (E.D.N.C. Feb. 22, 2019) (citing *Greene*, 376 U.S. at 160); *see also Stone v. Hamilton*, 308 F.3d 751, 754 (7th Cir. 2002) ("[T]he law disfavors a retroactive application of a statute."); *id.* at 755 ("A statute has a retroactive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transaction or considerations already past.'") (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)). Here, there is no "manifest intention" that the Sixth IFR was to be applied retroactively. Instead, it is clear the Sixth IFR was effective as of May 4, 2020. 85 Fed. Reg. 26,324. Therefore, the intent is clearly expressed and the Sixth IFR cannot be retroactively applied.

Plaintiff applied for its PPP loan before the Sixth IFR was in force. There was no "clear expression" or "manifest intent" that the Sixth IFR be applied retroactively. In fact, the Sixth IFR clearly states that it has no retroactive effect. 85 Fed. Reg. 26,324. Thus, it is clear that the Sixth IFR should be applied to loan applications submitted *after* May 4, 2020, and not retroactively to prohibit Plaintiff—and similarly situated small businesses—from receiving the aid they were promised. As such, the SBA's attempt to apply the Sixth IFR retroactively to preclude Plaintiff from PPP eligibility is in direct contravention of law and statutory authority. Therefore, this Court should grant Plaintiff's Motion for Summary Judgment.

II.     **The plain language of the CARES Act PPP eligibility provision precludes business-type eligibility restrictions as unlawful.**

In constructing the CARES Act, it is clear that Congress wanted small businesses, like Plaintiff, to be eligible for PPP loans. This is precisely because Congress's intent behind the CARES Act is clear—there is no need to give meaning or effect to a Congressional act or statute that is not ambiguous on its face. *See City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) ("[A]pplying the ordinary tools of statutory construction, the court must determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress."). The Sixth IFR enforces a business-type eligibility restriction, running counter to the text of the CARES Act, which, at no point, references "corporate groups" nor places these restrictions on businesses applying for PPP loans. Because the text of the CARES Act does not place the restrictions set forth in the Sixth IFR and clearly calls for the expansion of PPP loan eligibility, this Court should find that the Sixth IFR is unlawful and in contravention of established law.

14

In construing statutes, "courts must give effect to the clear meaning of statutes as written[,] . . . giving each word its ordinary, contemporary, common meaning." *Star Athletica, L.L.C. v. Varsity Brands*, 580 U.S. 405, 414 (2017). If the Court determines that the statute is clear and unambiguous, the Court goes no further. *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004); *see also In re USA Gymnastics*, Nos. 18-09108-RLM-aa, 20-50055, 2020 Bankr. LEXIS 3747, at *25 (Bankr. S.D. Ind. June 12, 2020) (applying *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)) ("Thus, the first question is whether Congress has directly spoken to the precise question at issue. If the intent is clear, that is the end of the matter and the Court must give effect to that unambiguously expressed intent."). Courts should "presume Congress says what it means and means what it says." *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016). As such, deference is not provided to the federal agency if there is no ambiguity. *See City of Arlington*, 569 U.S. at 296.

There are three portions of the CARES Act that unambiguously make the Plaintiff eligible for full forgiveness of its PPP loan. First, the CARES Act provides that "**any** business concern . . . **shall** be eligible" for PPP loans subject to the size requirements and other limitations in the CARES Act (none of which are applicable to Plaintiff). *See* 15 U.S.C. § 636(a)(36)(D) (emphasis added). The United States Supreme Court has consistently held that "the word 'any' naturally caries 'an expansive meaning.'" *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (citing *Untied States v. Gonzales*, 520 U.S. 1, 5 (1997)). When the word precedes "a 'singular noun in the affirmative contexts,' the word 'any' ordinarily 'refer[s] to a member of a particular group or class without distinction or limitation' and in this way 'impl[ies] **every** member of the class or group.'" *Id.* (citing Oxford English Dictionary (3d ed., Mar. 2016)) (emphasis added).

15

Second, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, 15 U.S.C. § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum.  *See also Nat'l Ass'n of Home Builders v. U.S. Small Bus. Admin.*, No. 2011780, 2021 U.S. Dist. LEXIS 186548, at *35 (E.D. Mich. Sept. 28, 2021)[1] (citing *DV Diamond Club*, 960 F.3d at 746-47) ("Thus, the [CARES] Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation.  Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances.").  Courts should "presume that [C]ongress says what it means and means what it says."  *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 732 (5th Cir. 2018) (citing *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016)).

Finally, the CARES Act's inclusion of a rule pertaining to the maximum loan amount for a PPP loan was intentional and must be afforded its full effect.  In relevant part, the CARES Act provides:

> Maximum loan amount.—Except as provided in subparagraph (V), during the covered period, with respect to a covered loan, the maximum loan amount **shall be the lesser of**—
> (i)
> (I) the sum of—
> (aa) the product obtained by multiplying—
> (AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is made, except that an applicant that is a seasonal employer shall use the average total monthly payments for payroll for any 12-week period selected by the seasonal employer between February 15, 2019, and February 15, 2020; by
> (BB) 2.5; and

---

[1]  This case was appealed to the Sixth Circuit Court of Appeals.  However, during the pendency of the appeal, the parties moved to dismiss the appeal as "moot" given the SBA agreed to forgive the claimants' PPP loans.  *See Nat'l Ass'n of Home Builders v. SBA*, No. 21-1765, Joint Motion to Dismiss, dated August 29, 2022.  The parties in that case also requested that the District Court's decision be vacated as part of the settlement, which was granted by the Sixth Circuit on January 13, 2023.  *See id.*  Nevertheless, this Court should still find persuasive the *Nat'l Ass'n of Home Builders* District Court's decision.  The SBA essentially determined that it had an adverse ruling, and, in order to avoid bad case law, forgave the claimants' PPP loans.  This does not override the analysis of the District Court.

> (bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available to be refinanced under the covered loan; **or**
>
> . . .
>
> (ii) **$10,000,000**.

15 U.S.C. § 636(a)(36)(E) (emphasis added). This definition clearly contemplates that the maximum loan amount of an eligible PPP loan is $10,000,000. *See id.*

Combined together, Congress's intent in enacting the CARES Act is clear, and numerous courts have found that the SBA exceeded its statutory authority by promulgating regulations contradictory to the plain language and intent of the CARES Act. *See Nat'l Ass'n of Home Builders,* 2021 U.S. Dist. LEXIS 186548, at *35 (enjoining the SBA from denying PPP loans to otherwise-qualified applicants on the basis of the Interim Final Rule, given the Interim Final Rule exceeded the SBA's statutory authority); *DV Diamond Club*, 960 F.3d at 746-47 (6th Cir. 2020) (denying a motion for stay of injunction barring the Interim Final Rule's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on their claim that the rule conflicted with the CARES Act); *Camelot Banquet Rooms*, 458 F. Supp. 3d at 1050 (holding that the Exclusion Rule exceeds statutory authority), *dismissed*, No. 20-1729, No. 20-1730, 2020 WL 6481792 (7th Cir. May 20, 2020) (denying the SBA's motion for a stay pending appeal); *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *7 (Bankr. D.N.M. May 1, 2020) (holding that the SBA's Interim Final Rule "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds"); *In re USA Gymnastics*, 2020 Bankr. LEXIS 3747, at *29-30 (finding that the CARES Act and Congress' intent is clear, but even if intent was not clear, the Fourth Interim Final Rule was so "manifestly contrary to the statute because it knew how to provide for pre-COVID-19 exclusions for

17

bankruptcy on PPP loan eligibility, stating "[t]he only inference is that Congress intended to afford the full advantages of the CARES Act and the PPP program to *all* applicants with fewer than 500 employees with no regard to ability to pay and to impose the bankruptcy exclusion only on mid-size businesses."). The United States District Court for the Eastern District of Michigan's analysis on this issue should be adopted by this Court:

> The rule at issue here, however, concerns a topic on which Congress *has* expressly spoken, and its express words plainly contradict the defendants' reading of the statute. . . . No such deficiency of legislative imperative is found in the statute here, where section 636(a)(36)(D)(i) enunciates in no uncertain terms the criteria respecting the *types* and *sizes* of entities that may apply for PPP loans. As the *DV Diamond* holdings make clear, "any" means any, and "shall" means shall. Any business within the specified size ranges may apply, and the SBA must lend to them. Moreover, the holdings in *DV Diamond* and [*In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020)] are entirely harmonious because the PPP provisions, read within the context of the full statutory scheme, consistently may be read as providing both that *all* bankrupt entities are disqualified from receiving *any* loans from the SBA (including any loan issued through the PPP program), and that "*any* business concern" which is not presently financially defunct may apply for and receive a loan issued within the discrete scope of the PPP.

*Nat'l Ass'n of Home Builders,* 2021 U.S. Dist. LEXIS 186548, at \*27-28 (emphasis in original).[2]

The intent of Congress in enacting the CARES Act is unambiguous because the text is clear that "any business concern," including Plaintiff, is entitled to PPP loan forgiveness under the CARES Act. The SBA's attempt to contravene Congress's clear intent is not in accordance with law and is in excess of statutory authority. This Court should, therefore, adopt and apply the reasoning of the United States District Court for the Eastern District of Michigan in the foregoing case and similarly find that the SBA's decision to deny Plaintiff's PPP loan forgiveness application was not in accordance with the law and was in excess of the SBA's statutory authority.

---

[2] The United States District Court for the Eastern District of Michigan, using this analysis, ultimately found that the claimants were eligible for forgiveness of their PPP loans despite the SBA's attempted retroactive application of the Interim Final Rule to the claimants. *See id.*, at \*35.

18

### III. The Sixth IFR is arbitrary and capricious.

Along with the above, this Court should also set aside the decision of the SBA and find that the Sixth IFR is arbitrary and capricious under the law. The APA requires a reviewing court to set aside an agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Seventh Circuit has held:

> An agency decision will be found "arbitrary and capricious" if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Boucher v. United States Department of Agriculture*, 934 F.3d 530, 547 (7th Cir. 2019) (quoting *Motor Vehicle Mrfs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A reviewing court facing these deficiencies should not make up for the agency's gaps by "'supply[ing] a reasoned basis for the agency's action that the agency itself has not given.'" *Id.* (quoting *State Farm*, 463 U.S. at 43). As the Supreme Court has held, "[a] contrary approach would . . . render judicial review generally meaningless." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989). Overall, "the role of courts in reviewing arbitrary and capricious challenges is to 'simply ensur[e] that the agency has acted within a zone of reasonableness.'" *Missouri v. Biden*, 142 S. Ct. 647, 654 (2022) (citing *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)).

The Sixth IFR was promulgated without any reasoned explanation and is the very definition of arbitrary and capricious. As discussed above, the SBA's implementation of the Sixth IFR runs counter to the very text of the CARES Act. Importantly, the CARES Act provided that "in addition to small business concerns, **any** business concern . . . **shall** be eligible to receive a covered loan" in the maximum amount of $10 million, subject only to the conditions that the business meet the CARES Act's requirements, make a required good-faith borrower certification, and have been in

operation as of February 15, 2020. *See* 15 USC § 636(a)(36)(D) and (E) (emphasis added). The Sixth IFR rolled back this provision and placed restrictions on which businesses could apply for and receive loan forgiveness, *even after* approving these now-restricted businesses' PPP loan applications. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 ("[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider."); *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) (noting that, under ERISA, a decision is arbitrary and capricious, and thus unreasonable, when the decision controverts the plain meaning of the ERISA plan). The SBA completed the implementation of this exclusionary rule without any explanation, and in contravention of the plain language of the CARES Act.

While Congress provided the SBA the authority to issue regulations without traditional notice, *see* CARES Act § 1114, it did not grant the SBA the authority to impose *additional* eligibility criteria where the text was unambiguous. Beyond, Congress's waiver of the notice requirements does not preclude the SBA from proffering a reasonable basis for its decision to cut back the CARES Act. The Sixth IFR fails to set forth the SBA's reasoning behind its decision. Thus, its decision to cut back the CARES Act is arbitrary and capricious. For the reasons stated herein, this Court should grant Plaintiff's Motion for Summary Judgment and reverse the OHA Decision.

**IV.     The SBA lacks authority to limit the type of payment eligible for a PPP loan.**

Plaintiff's Motion for Summary Judgment should be granted because the SBA exceeded its statutory authority by promulgating regulations contradictory to the intent of the CARES Act. Congress's intent in enacting the CARES Act is clear, and numerous courts have found that the SBA exceeded its statutory authority by promulgating regulations through the Interim Final Rules that are contradictory to the plain language and intent of the CARES Act. *See Nat'l Ass'n of Home*

*Builders,* 2021 U.S. Dist. LEXIS 186548, at *35 (enjoining the SBA from denying PPP loans to otherwise-qualified applicants on the basis of the Interim Final Rule, given the Interim Final Rule exceeded the SBA's statutory authority); *DV Diamond Club,* 960 F.3d at 746-47 (denying a motion for stay of injunction barring the Interim Final Rule's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on their claim that the rule conflicted with the CARES Act); *Camelot Banquet Rooms, Inc.*, 458 F. Supp. 3d at 1050 (holding that the First IFR exceeds statutory authority); *Camelot Banquet Rooms, Inc.*, No. 20-1729 (order denying the SBA's motion for a stay pending appeal); *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *7 (holding that the SBA's Interim Final Rule "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds"); *In re USA Gymnastics*, 2020 Bankr. LEXIS 3747, at *29-30 (finding that the CARES Act and congressional intent are clear, but even if intent was not clear, the Fourth Interim Final Rule was so "manifestly contrary to the statute" because it knew how to provide for pre-COVID-19 exclusions for bankruptcy on PPP loan eligibility, stating "[t]he only inference is that Congress intended to afford the full advantages of the CARES Act and the PPP program to *all* applicants with fewer than 500 employees with no regard to ability to pay and to impose the bankruptcy exclusion only on mid-size businesses.").

The adoption of regulations excluding loan forgiveness for payments based on a "corporate group" aggregate maximum is an unlawful interpretation of the CARES Act by the SBA. When analyzing the validity of an agency rule based solely upon legal grounds, courts use the *Chevron* analysis. *See Sunrise Coop., Inc. v. United States Dept. of Agric.*, 891 F.3d 652, 656 (6th Cir. 2018). In *Sunrise Coop.*, the Sixth Circuit summarized the familiar *Chevron* analysis:

21

> Under *Chevron*, courts defer to agencies' reasonable readings of ambiguous statutes. The first step of Chevron instructs courts to analyze whether Congress has "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. If it has, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842–43, 104 S.Ct. 2778. We employ "traditional tools of statutory construction" to determine whether Congress has "spoken to the precise question at issue." *Id.* at 842, 843 n.9, 104 S.Ct. 2778. If the statute is unambiguous, then Congress has spoken to the precise question at issue. *See id*. at 843, 104 S.Ct. 2778. In other words, if a construction of a statute "follows from the unambiguous terms of the statute," the statute "leaves no room for agency discretion." *Nat'l Cable & Telecomm. Ass'n v. Brand-X Internet Servs*., 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). If a statute is ambiguous, the interpretation might nevertheless be unreasonable under *Chevron's* second step, which asks whether "the agency's [interpretation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

*Sunrise Coop., Inc*., 891 F.3d at 656 (citing *Chevron*, 467 U.S. 837); *see also Esquival-Quintana v. Sessions*, 137 S. Ct. 1562 (2017).

Section 1114 of the CARES Act instructs the Administrator to issue regulations "to carry out this title and the amendments made by this title" within 15 days and without regard to the usual notice requirements in 5 U.S.C. § 553(b). Also, 15 U.S.C. § 634 authorizes the Administrator to "make such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to this chapter." Congress intended for the CARES Act to unambiguously allow a borrower to obtain a loan up to $10,000,000.00, *see* 15 U.S.C. 636(a)(36)(E); 15 U.S.C. § 636(a)(36)(E)(ii), yet the SBA, through the Sixth IFR, arbitrarily imposed a $20,000,000.00 aggregate loan cap to "corporate groups" in direct contravention to the CARES Act. As such, the Sixth IFR is invalid precisely because its effect does not carry out the CARES Act as Congress intended. *See Nat'l Ass'n of Home Builders v. United States SBA*, 2021 U.S. Dist. LEXIS 186548, at *32.

Accordingly, the SBA's reliance on the Sixth IFR in denying forgiveness of Plaintiff's PPP loan is in clear error and exceeds the authority set forth by Congress in the CARES Act. The OHA

22

Decision and the SBA Final Loan Decision must be reversed, and judgment should be granted in Plaintiff's favor.

**V.      Plaintiff is not part of a "corporate group."**

Assuming *arguendo* that the Sixth IFR is not improperly being applied retroactively, nor is it contrary to the text of the CARES Act—both of which Plaintiff expressly rejects—Plaintiff does not fit the definition of a "corporate group."  As such, the limitation imposed by the Sixth IFR is inapplicable and should not bar forgiveness of Plaintiff's PPP loan.  As such, Plaintiff requests that this Court grant its Motion for Summary Judgment and reverse the decision of the OHA.

The Sixth IFR provides that "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." 85 Fed. Reg. 26,324.  The Sixth IFR defines a "corporate group" as businesses that "are majority owned, directly or indirectly, by a common parent." *Id.*  The Code of Federal Regulations has defined a "majority-owned affiliate" as

> an entity (other than the issuing entity) that, directly or indirectly, majority controls, is majority controlled by or is under common majority control with, such person. For purposes of this definition, majority control means ownership of **more than 50 percent** of the equity of an entity, or ownership of any other controlling financial interest in the entity, as determined under the GAAP.

12 C.F.R. § 1234.2 (emphasis added); *see also* Dictionary.com/browse/majority (defining "majority" as "the greater part or number; the number larger than half the total.").

Plaintiff is not "majority owned, directly or indirectly, by a common parent."  85 Fed. Reg. 26,324.  Michael Blisko ("Blisko") owns 40%, Gubin Enterprises Limited Partnership ("Gubin Enterprises") owns 40%, and A&F Realty, LLC ("A&F") owns the remaining 20%.  Gubin Enterprises, in turn, is owned by several trusts, where the beneficial ownership rests with four individuals.  Blisko and A&F have no ownership interest in Gubin Enterprises.  Additionally, A&F

is owned by 61 different individuals, none of which are Blisko or Gubin Enterprises. As such, Plaintiff does not have a majority owner, meaning **a** person or **an** entity who has ownership of "**more than 50 percent of the entity**." 12 C.F.R. § 1234.2 (emphasis added). Without a majority owner, Plaintiff cannot be part of a "corporate group" pursuant to the definition in the Sixth IFR.

Notably, the OHA's Decision improperly applies the affiliation rules in order to determine that Plaintiff was part of a "corporate group." *See* OHA Decision, p. 10. Nothing in the Sixth IFR, even if applicable, allows the SBA or OHA to combine individuals or entities to create a corporate group. *See* Sixth IFR. In addition, the standards for affiliation are clearly separate and distinct from the definition of a "corporate group," as the Sixth IFR could have, but did not, adopt the affiliation standards and definitions to "corporate groups." *See id.*

Even if the affiliation rules apply in determining a "corporate group" under the Sixth IFR, which they do not, the rules make clear that Plaintiff would not be included in a "corporate group" based on common ownership, contrary to the OHA's finding to the contrary. The affiliation rules in effect at the time Plaintiff applied for its PPP loan provided that there is an affiliation based on ownership when the following is present:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control **more than 50 percent of the concern's voting equity**. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners **who control the management of the concern**) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

13 C.F.R. § 121.301(f) (emphasis added); *see also* OHA Decision, p. 10. Affiliation based on common ownership cannot exist with Plaintiff because no individual or entity owns or controls "more than 50 percent of [Borrower's] voting equity." *Id.*

24

Significantly, on April 10, 2023, these affiliation rules were amended to identify situations where affiliation would still arise when no individual or entity owns or controls more than 50 percent of an entity. 13 C.F.R. § 121.301(f)(1) now states, in relevant part:

> (i) When the Applicant owns **more than 50 percent** of another business, the Applicant and the other business are affiliated.
>
> (ii) When a business owns **more than 50 percent** of an Applicant, the business that owns the Applicant is affiliated with the Applicant. Additionally, if the business entity owner that owns more than 50 percent of the Applicant also owns more than 50 percent of another business that operates in the same 3-digit NAICS subsector as the Applicant, then the business entity owner, the other business and the Applicant are all affiliated.
>
> (iii) When an individual owns **more than 50 percent** of the Applicant and the individual also owns more than 50 percent of another business entity that operates in the same 3-digit NAICS subsector as the Applicant, the Applicant and the individual owner's other business entity are affiliated.
>
> (iv) When the Applicant **does not have an owner that owns more than 50 percent of the Applicant**, if an owner of 20 percent or more of the Applicant is a business that operates in the same 3-digit NAICS subsector as the Applicant, the Applicant and the owner are affiliated.
>
> (v) When the Applicant **does not have an owner that owns more than 50 percent of the Applicant**, if an owner of 20 percent or more of the Applicant also owns more than 50 percent of another business entity that operates in the same 3-digit NAICS subsector as the Applicant, the Applicant and the owner's other business entity are affiliated.

13 C.F.R. § 121.301(f)(1) (emphasis added). It is clear that the later inclusion of explicit constraints on the affiliation rules for *less than 50 percent ownership* reinforces the fact that such a limitation **did not apply** before the April 2023 amendment. *See Nat'l Ass'n of Home Builders v. United States SBA*, 2021 U.S. Dist. LEXIS 186548, at *32 ("The inclusion of additional explicit constraints in the later enactments reinforces rather than contradicts the conclusion that such limitations deliberately were omitted by Congress . . ."). As such, the amended rules make evident that the affiliation rules in place at the time of Plaintiff's PPP application are properly interpreted

to mean that an individual or entity who does not own **more than 50 percent** of a business could not be affiliated or considered part of a corporate group. Further, for the same reasons as set forth above and in the Appeal, these amended affiliation rules cannot be retroactively applied to Plaintiff. *See Cunningham,* 531 F. Supp. 3d at 1173-1173 (citing *Union Pac. R.R. Co.,* 231 U.S. at 199) (stating that statutes and regulations cannot be applied retroactively unless there is a "manifest intention" that they are meant to be retroactive); *Gibbon*, 2019 U.S. Dist. LEXIS 64916, at *14 (citing *Greene*, 376 U.S. at 160); *see also Stone*, 308 F.3d at 754 ("[T]he law disfavors a retroactive application of a statute."); *id.* at 755 ("A statute has a retroactive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transaction or considerations already past.'") (citing *Landgraf*, 511 U.S. at 269).

In addition, because there is no majority owner, there is no "common parent" under the Sixth IFR. Black's Law Dictionary defines a "parent corporation" as "[a] corporation that has a **controlling interest** in another corporation (called a *subsidiary corporation*), usu. through ownership **of more than one-half the voting stock**. — Often shortened to *parent*. — Also termed *parent company*." Black's Law Dictionary 418 (10th ed. 2014) (italics in original, bold emphasis added); *cf.* 15 U.S.C. § 636(a)(36)(D)(iv) (noting applicability of the affiliation standards).[3] Neither Blisko, Gubin Enterprises, nor A&F can meet the definition of a "common parent" because they do not hold a controlling interest in Plaintiff. Further, Blisko cannot be a "common parent[s]" because he is an individual, not a company.

---

[3] The standards for affiliation are clearly separate and distinct from the definition of a "corporate group," as the Sixth IFR could have, but did not, adopt the affiliation standards and definitions of "corporate groups."

Interestingly, the SBA and the OHA fail to identify any actual legal entity as the common parent in the OHA Decision or the SBA Final Loan Decision. Instead, the OHA's Decision creates an "implied partnership" between Blisko and Gubin Enterprises. *See* OHA Decision, p. 10. Nothing in the Sixth IFR or the CARES Act permits the SBA or OHA to impose an "implied partnership" theory in determining whether Plaintiff is part of a corporate group under the Sixth IFR. This analysis is flawed, and the OHA Decision must be reversed.

Based on the foregoing, it is evident that Plaintiff cannot belong to a corporate group as it does not meet the Sixth IFR's definition of "corporate group." Even if the Sixth IFR were deemed applicable and not an abuse of administrative powers because Plaintiff is not part of a corporate group it is entitled to forgiveness of its PPP loan.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court grant summary judgment in its favor and find that the Defendants' actions in denying Plaintiff's PPP loan forgiveness application based on the retroactive application of the Sixth IFR was unlawful, in excess of statutory authority, and arbitrary and capricious, or, alternatively, that Defendants erred in finding that Plaintiff was part of a "corporate group." Plaintiff respectfully requests the Court enter judgment as a matter of law in Plaintiff's favor and against Defendant, and for such other, further, and additional relief as the Court deems just and equitable.

Dated this 16th day of January, 2024.

PARKSHORE ESTATES NURSING AND
REHABILITATION CENTER LLC, Plaintiff,

By: /s/ *Tiffany S. Beerman*
Tiffany S. Beerman
John A. Svoboda
Dvorak Law Group, LLC
9500 W. Dodge Rd., Ste. 100
Omaha, NE 68114
Tel: 402-934-4770
Fax: 402-933-9630
tbeerman@ddlawgroup.com
jsvoboda@ddlawgroup.com

AND

Jason M. Sax, #6243815
Zwelling Law, PLLC
161 North Clark Street, Ste. 1600
Chicago, IL 60601
Tel: (312) 345-7231
Fax: (312) 981-0051
saxJ@zwellinglaw.com

Attorneys for Plaintiff.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on January 16, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered with the CM/ECF system. The undersigned further states that a copy of the foregoing was sent to the following:

William M. Strom
219 South Dearborn Street
Chicago, Illinois 60604
(312) 697-4087
william.strom@usdoj.gov

/s/ *Tiffany S. Beerman*
Tiffany S. Beerman

28